# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS A. BRIDGES,<br><br>                Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:04-CV-05776-OWW-SMS

FINDINGS AND RECOMMENDATIONS TO
DENY SOCIAL SECURITY COMPLAINT
(DOC. 1)

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for supplemental security income (SSI) pursuant to Title XVI of the Act. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15).

## PRIOR PROCEEDINGS

On August 21, 2001, Plaintiff filed a claim for SSI benefits under Title XVI of the Act, alleging disability beginning on February 24, 1983, because of back pain and spasms due to a fused

spine, trigeminal neuralgia, chronic active hepatitis C, and a
personality disorder. (A.R. 86-89. 91.) After Plaintiff's claim
was denied initially and on reconsideration, Plaintiff requested
a hearing before an administrative law judge (ALJ) of the Social
Security Administration (SSA). On August 19, 2003, Plaintiff
appeared with an attorney and testified before James E. Ross, the
ALJ. (Tr. 15.) On October 15, 2003, the ALJ denied Plaintiff's
application for benefits. (Id. at 15-21.) Plaintiff appealed the
ALJ's decision to the Appeals Council. On April 19, 2004, the
Appeals Council denied Plaintiff's request for review. (Id. at 5-
7.)

On May 27, 2004, Plaintiff filed the complaint in the
instant action. Defendant filed the administrative record on
October 6, 2004. On February 11, 2005, Plaintiff filed an opening
brief. On June 2, 2005, Defendant filed a brief in opposition.

<u>ADMINISTRATIVE FINDINGS</u>

Plaintiff had previously applied for SSI benefits in
September 1998, alleging disability since July 1997; by decision
dated April 10, 2000, ALJ James P. Berry concluded that Plaintiff
had a medically severe combination of impairments, including
residual back symptoms, an anti-social personality disorder,
asymptomatic hepatitis C, and tic douloureux. (Tr. 32-33.) The
impairments did not meet or equal listed impairments. (Tr. 36.)
Plaintiff's activities of daily living and mental functioning had
not been impaired at all by his anti-social personality disorder;
he seldom had deficiencies of concentration, persistence, and
pace resulting in failure to complete tasks timely, and only one
episode of deterioration many years previously; he could function

2

in a social setting, interact and respond appropriately to coworkers and supervisors and the public, and could maintain attention, concentration, persistence, and pace, follow work rules and attendance policies, and perform simple repetitive tasks. (Tr. 34, 36-37.) He was found capable of light work involving simple, repetitive tasks with avoidance of repetitive bending and stooping and over-shoulder activities.(Tr. 37, 39.) Although he could not perform his past relevant work, given his younger age of forty-seven years, college level education and vocational training, and RFC, he could perform other work in the economy, including the jobs of assembler, agricultural grader, and cashier II. (Tr. 38, 40.)

In the present proceeding, the ALJ found that the prior decision of April 10, 2000, created a presumption of continuing non-disability which Plaintiff could overcome by proving changed circumstances indicating a greater disability. (Tr. 15.) The ALJ considered medical evidence since April 11, 2000 but concluded that Plaintiff had failed to meet the burden of proving changed circumstances and thus had not overcome the presumption. (Tr. 15.) Plaintiff had not demonstrated any new severe impairments since April 2000, and Plaintiff had not demonstrated that his impairments became significantly worse since April 2000. (Tr. 19.) Plaintiff's allegations of limitations were not credible. (Tr. 20.) Plaintiff did not have any physical or mental impairment or impairments that significantly limited his ability to perform basic work-related activities; he could perform unskilled, light work. Therefore, Plaintiff had not established with new medical evidence changed circumstances, and he was not

disabled pursuant to Rules 202.20 and 202.13. (Tr. 20.)

ISSUE PRESENTED

Plaintiff argues that the psychiatric evidence demonstrated changed circumstances consisting of a worsening of his mental disability.

FACTS[1]

I. Plaintiff's Testimony

Plaintiff testified that he had an Associate of Science Degree in electronics, had back surgery in 1983, last worked in "1988 for about three months," and had been in prison for several years (he was last paroled in 1998) (Tr. 352-353, 359, 364-366). When asked what had changed since April 2000, Plaintiff said, "[n]othing really" (Tr. 366). When asked if he had gotten any worse since April 2000, Plaintiff said, "I think I've deteriorated since then" and referred to his physical problems (Tr. 367). Plaintiff said he could not work because of pain in his back, hepatitis C, and trigeminal neuralgia (Tr. 353-356). Plaintiff said pain medication "helps," and that he "spen[t] most of the day on my back" "mostly just watch[ing] TV" (Tr. 356-357, 359, 361).

When asked what kind of mental problems he had, Plaintiff said he did not "want to be around people very much"; "sometimes" had nightmares; had "panic attacks" "several times"; and felt he was "not as sharp as [he] used to be" and forgot what he was talking about in mid-sentence fairly often (Tr. 358-360). Plaintiff said he was not taking any psychiatric medications, had

---

[1] Because Plaintiff relies only on the evidence concerning his mental condition, the Court considers the facts pertaining to Plaintiff's mental condition.

1  not seen any mental health doctors since he "got off parole,"
2  felt he was not "getting any better" and thought he "need[ed] to
3  go see someone" (Tr. 360-361, 364). Plaintiff said he was
4  supported by welfare/general assistance (Tr. 357, 359).

5  Plaintiff said he could lift and carry 20 pounds, walk about
6  "seven or eight city blocks," stand for an "[h]our and a half,
7  two hours," and sit "[a]s long as I can brace my back" (Tr. 357-
8  358). Plaintiff testified that he dressed himself; did "very
9  little" housework (his mother helped); cooked using a hotplate or
10 microwave; shopped for groceries (with his mother's help); did
11 not go to church, movies, have any hobbies or exercise; and got
12 around by riding his bicycle "[i]f I have to and I don't have to
13 go that far" (Tr. 358-359, 367-368).

14 II. Plaintiff's Medical History

15 Because consideration of evidence from prior to April 10,
16 2000, is foreclosed by res judicata, only evidence from after
17 April 10, 2000 is discussed.

18 Kern County Medical Center (Kern County) progress notes
19 dated April 2000 state that side effects from treatment for
20 hepatitis C had "abated," and that Plaintiff was compliant with
21 medication and reported "no" depression, "no ETOH" (alcohol), and
22 "no complaints" (Tr. 187). Plaintiff was started on a combination
23 of Interferon and Ribitron on May 15, 2000, and did well with no
24 side effects (Tr. 176, 181). On examination on May 31, 2000,
25 Plaintiff was "alert," "oriented," "well-developed,"
26 "well-nourished," and "in no distress." Plaintiff declined the
27 option for physical therapy ("he is busy right now") (Tr.
28 183-184). In June 2000, Plaintiff reported that the depression

and anxiety that he had experienced after starting medication was getting better, and there was no suicidal ideation (Tr. 181). In August 2000, Plaintiff reported that his headaches had decreased to two or three a month, and Motrin and Elavil were prescribed for a low grade headache on the right side; any depression was not significant (Tr. 176-77). He denied depression in September 2000, and it was found to be mild. (Tr. 168.) In October 2000, Plaintiff said he "fe[lt] ok" and had a "good appetite"; (Tr. 166). Dr. Ghadiya diagnosed "status post spinal thoracic surgery" and "possible drug seeking behavior"; advised Plaintiff to reduce medication; and said that if Plaintiff "is willing, then he is able to work, light duty and then duties as tolerated" (Id.) In December 2000, Plaintiff had "no new complaints," "denie[d] depression," and said his appetite was "ok"; his doctor found mild depression (Tr. 160).

In February 2001, Plaintiff stopped taking Interferon after a year of treatment, and reported that he took Darvon for severe pain, or meditated, which took away the pain. (Tr. 151.) In September 2001, Carlos Quiros, M.D., provided a handwritten note in which he opined Plaintiff could not work due to pain (Tr. 167, 217; see also Tr. 363-364). In December 2001, consultative internist Emanuel Dozier, M.D., found Plaintiff was alert and oriented (Tr. 127). Dr. Dozer said there "are no neurologic changes," and he opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk for 6 hours (in an 8 hour day); sit for 6 hours (in an 8 hour day); and did not have any significant postural restrictions, manipulative restrictions, special sense restrictions, or

6

environmental restrictions (Tr. 127, 129-130). Plaintiff reported having ceased using heroin intravenously about a year before the exam. (Tr. 127.)

In February 2002, consultative psychiatrist S. A. Manohara, M.D., who was board certified in general, forensic, geriatric, and addiction psychiatry, examined Plaintiff and found that he was alert and oriented; his mood was anxious and his affect labile; his thought content focused on the violence he saw in prison, where he was incarcerated for over thirteen years for attempted armed robbery, assault with a deadly weapon, and child molestation. He denied hallucinations, delusions, or suicidal or homicidal ideation; however, he stated he had a short fuse. He claimed to be getting really forgetful, but he was generally able to answer questions relevantly and coherently, although he had a tendency to be somewhat tangential; his past memory was good; and he had average intellectual functions. He was able to do similarities and to abstract proverbs. As to concentration, he was able to spell house backwards and do simple calculations, although he could not do serial 7's. His insight and judgment were impaired. He reported that he had never been in a psychiatric hospital or received psychotropic medication for his mental condition; he denied any history of bipolar disorder, schizophrenia, or major depression. He had no contact with his daughter, whom his parents were raising; no one in his family wanted anything to do with him except for his mother, who helped him a little. Plaintiff reported that he lived by himself on welfare; he cooked, did laundry with his mother's help, took public transportation, and managed his own money. Dr. Manohara

assigned "no diagnosis" at Axis I; "antisocial personality disorder" at Axis II; assigned a GAF (global assessment of functioning) of 52; and did not assign any limitations (Tr. 131-34).

In August 2002, Plaintiff requested something stronger for the pain. (Tr. 319.)

Dr. Dozer performed an internal medicine evaluation of Plaintiff again in September 2002, and opined that Plaintiff could lift and carry 50 pounds occasionally, 20 pounds frequently, stand and/or walk for 6 hours in a workday, and sit for 6 hours (in a workday). There were "no neurological deficits," "no significant postural restrictions," "no manipulative restrictions," "no restriction of special senses," and no environmental restrictions (Tr. 229-35).

In December 2002, Plaintiff's back pain was under "good control [with] meds." (Tr. 315).

In January 2003, Plaintiff received trigger point injections (Tr. 313). In April 2003, Plaintiff had "no complaints," and his back pain was "controlled [with] pain meds." (Tr. 311). In June 2003, Plaintiff said he was "doing well," "other than" he "was applying for disability" and "needs a Dr's. note/form to be filled out" and also wanted approval for a dental procedure (Tr. 298-299). Dr. Quiros opined that Plaintiff was incapable of work at any exertional level and had been disabled since June 2001 due to a painful back with pain slightly relieved by medication; he could sit two hours, stand one to two hours, and walk for forty-five minutes (Tr. 274). In July 2003, Plaintiff said he was "doing well" (Tr. 277).

In September 2002, consultative psychiatrist Shohreh Ghaemian, M.D., examined Plaintiff. (Tr. 236-41.) Plaintiff was an average historian who reported fifteen years of incarceration for aggressive, assaultive behavior (armed robbery and three counts of child molestation), which included sexually violent predator history. Plaintiff reported that he developed severe panic and agorophobia while incarcerated, witnessed a lot of violence there, and had developed nightmares and flashbacks from the trauma. He reported that he was isolated and did not want to go out or socialize. His daughter had disowned him; he was isolated and withdrawn and did not have a relationship with friends or others. He suffered inability to sleep, a fine appetite, lack of energy, lack of feeling motivated, mood swings, difficulty concentrating, and a short memory. He denied suicidal or homicidal thoughts, prior hospitalizations, or suicide attempts. He reported having been sober for fifteen years and having abused cocaine and heroin in 1972. Plaintiff took Baclofen, Darvocet as needed, and Amitriptyline 50 mg. PO q.h.s. for sleep and neuralgia. He took care of his own personal hygiene and finances and performed light house chores.

Dr. Ghaemian found that he was appropriately dressed with average grooming and was alert and fully oriented to time, date, person, and place. He was found to be calm and cooperative, had "a positive attitude toward the interview," and exhibited a "reactive" affect, although his stated mood was depressed. Dr. Ghaemian found that his thought process was logical, tight, and goal-oriented, with no flight of ideas; speech was of normal rate and pace, with relevant content; Plaintiff denied psychosis, and

no formed, organized delusions could be elicited; his immediate
memory was intact, recent memory was slightly impaired (recall of
three objects following five minutes in two attempts was 2/3);
past memory was intact; and he had full recall of all his
personal data and recent social events. His fund of knowledge was
above average. He could not perform serial 7's but could multiply
two single digits appropriately and correctly. With respect to
concentration, he could spell "world" forward and backward
without mistakes and could perform three-step commands without
difficulty. His abstract thinking and grasp of similarities and
differences was intact. His judgment and insight were average.

At Axis I, Dr. Ghaemian diagnosed "Post traumatic
stress disorder, chronic" (PTSD), "depressive disorder not
otherwise specified" (NOS), "rule out depression secondary to
general medical condition," and "polysubstance dependence in
late, full remission, strictly per claimant report." At Axis II,
Dr. Ghaemian diagnosed antisocial personality disorder. Dr.
Ghaemian assigned a GAF of 48-50 (Id.). Dr. Ghaemian said
Plaintiff "currently presents with nightmares, flashbacks,
depressed mood, lack of motivation, inability to sleep, and an
extensive history of violence," and "projects a reactive affect,
with no active psychosis and intact cognition" (Id.). Dr.
Ghaemian said Plaintiff's condition was complex and chronic; he
was "currently not in treatment" and said his prognosis "for the
next 12 months is guarded at this point" (Id.). Dr. Ghaemian said
that based on the examination and Plaintiff's reported "history
of violence and extensive history of substance abuse," Plaintiff
was "not capable of managing his funds on his own" but could

"integrate, process, retain and give back given information" (Tr. 240). He was isolated and lacked social support; he had not been working for a long time and was unable to "comprehend a work environment very well." Dr. Ghaemian said that it appeared that Plaintiff was not currently "capable of gainful employment" at any standard level and was unable to maintain regular attendance in a job setting or fulfill a normal workday, handle the stressors in a job setting, or respond appropriately to given instructions from a supervisor. His interactions with colleagues and society were quite jeopardized by his antisocial personality disorder and aggressive behavior. He needed psycho-social rehabilitation and possible vocational retraining in an area with minimal contact with society and other colleagues, a full psychiatric evaluation with close monitoring and follow-up with antidepressant medication to contain his current depressive symptoms, and might benefit from counseling sessions to develop insight and a support system to cope with his extensive prior legal history and violence, as well as his posttraumatic stress symptoms. (Tr. 240-41.)

In February and November 2002, Dr. Marina C. Vea, a state agency psychiatrist, completed a psychiatric review technique and a mental residual functional capacity assessment. (Tr. 242-55, 264-72). She reviewed Plaintiff's records with respect to a personality disorder, pedophilia, and substance addiction disorder and opined that Plaintiff was mildly limited in maintaining social functioning, and moderately limited in maintaining concentration, persistence, or pace (Tr. 242-255). She found that he was moderately limited in the ability to

1  understand, remember, and carry out detailed instructions (Tr.
2  264-265).

3      A State agency non-examining physician opined Plaintiff
4  could lift and/or carry 20 pounds occasionally, 10 pounds
5  frequently; stand and/or walk about 6 hours in an 8-hour workday;
6  sit about 6 hours in an 8-hour workday; occasionally climb; and
7  frequently balance, stoop, kneel, crouch, and crawl (Tr. 257-261;
8  see also Tr. 268-269, 270-272).

9                     STANDARD AND SCOPE OF REVIEW

10      Congress has provided a limited scope of judicial review of
11  the Commissioner's decision to deny benefits under the Act. In
12  reviewing findings of fact with respect to such determinations,
13  the Court must determine whether the decision of the Commissioner
14  is supported by substantial evidence. 42 U.S.C. § 405(g).
15  Substantial evidence means "more than a mere scintilla,"
16  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
17  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
18  (9th Cir. 1975). It is "such relevant evidence as a reasonable
19  mind might accept as adequate to support a conclusion."
20  Richardson, 402 U.S. at 401. The Court must consider the record
21  as a whole, weighing both the evidence that supports and the
22  evidence that detracts from the Commissioner's conclusion; it may
23  not simply isolate a portion of evidence that supports the
24  decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).
25  It is immaterial that the evidence would support a finding
26  contrary to that reached by the Commissioner; the determination
27  of the Commissioner as to a factual matter will stand if
28  supported by substantial evidence because it is the

                                  12

1  Commissioner's job, and not the Court's, to resolve conflicts in

2  the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th

3  Cir. 1975).

4      In weighing the evidence and making findings, the

5  Commissioner must apply the proper legal standards. <u>Burkhart v.</u>

6  <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

7  review the whole record and uphold the Commissioner's

8  determination that the claimant is not disabled if the

9  Commissioner applied the proper legal standards, and if the

10  Commissioner's findings are supported by substantial evidence.

11  <u>See, Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d

12  509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If

13  the Court concludes that the ALJ did not use the proper legal

14  standard, the matter will be remanded to permit application of

15  the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th

16  Cir. 1987).

17                          <u>ANALYSIS</u>

18      I. <u>Disability</u>

19      In order to qualify for benefits, a claimant must establish

20  that she is unable to engage in substantial gainful activity due

21  to a medically determinable physical or mental impairment which

22  has lasted or can be expected to last for a continuous period of

23  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

24  claimant must demonstrate a physical or mental impairment of such

25  severity that the claimant is not only unable to do the

26  claimant's previous work, but cannot, considering age, education,

27  and work experience, engage in any other kind of substantial

28  gainful work which exists in the national economy. 42 U.S.C.

1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d
1273, 1275 (9th Cir. 1990).

    The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. <u>See</u> 20 C.F.R. §

1  416.920.[2]

2      II. Changed Circumstances

3      Plaintiff argues that the psychiatric evidence demonstrated

4  changed circumstances consisting of a worsening of his mental

5  disability.

6      Plaintiff misconceives the nature of the review in which

7  this Court engages. It is not within the scope of substantial

8  evidence review to consider whether or not the evidence, if being

9  considered for the first time de novo, establishes or could

10 establish disability. Rather, as previously set forth, Congress

11 has determined that it is the function of this Court to determine

12 whether or not the ALJ's decision was made pursuant to correct

13 legal standards, was supported by substantial evidence, and

14 contained legally adequate findings.

15     Because Plaintiff was found not disabled in the prior

16 decision of the ALJ on April 10, 2000, there is a continuing

17 presumption of nondisability that Plaintiff must overcome by

18 proving changed circumstances indicating a greater disability.

19 Chavez v. Bowen, 844 F.2d 691, 693-94 (9th Cir. 1988).

20     The ALJ explained his express conclusion that Plaintiff had

21 not proved changed circumstances indicating a greater disability.

22 The ALJ referred to the reports of Drs. Manohara and Ghaemian.

23 (Tr. 17-18.) He also recited Plaintiff's testimony. (Tr. 18.) The

24 ALJ stated:

25         Claimant alleges depression, but testified that he is
           not taking any medication for such, nor does he
26         have a history of psychological, psychiatric, or
           mental health treatment. As noted earlier, claimant

27

28         _____

           [2] All references are to the 2003 edition of the Code of Federal Regulations unless otherwise specified.

actually denied experiencing depressive symptoms
(Exhibit 3F, p. 26).

(Tr. 19.) The ALJ noted that Plaintiff's testimony regarding his

daily activities was rather vague, but the ALJ referred to

questionnaires and reports from December 2001 and February and

September 2002 that demonstrated that Plaintiff was able to care

for his personal hygiene, take care of his own finances, perform

light household chores, take public transportation, walk to the

store several block from home to buy a few items, maintain

telephone contact with his mother or stepfather weekly or more

often, and administer his own medication. (Tr. 19.) The ALJ then

stated in pertinent part:

> Having considered all of the evidence of record, the
> undersigned concludes there have been no new severe
> impairments established in the record since April 2000,
> nor does the evidence show that claimant's impairments
> became significantly worse since April 2000. The
> undersigned finds the claimant still retains the
> residual functional capacity to engage in a light
> level of exertion, unskilled in nature....
> Much consideration is also given to Dr. Manohara's
> opinion as a consulting psychiatrist. Dr. Manohara
> provided a lengthy report of his findings in February
> 2002, and based upon his report and the opinion of
> the state agency medical consultant, claimant is capable
> of a light level of exertion (Exhibit 2F, p. 3;
> Exhibit 6F, p. 15). The undersigned finds these
> limitations are appropriate given the fact the record
> does not show that claimant has suffered from severe
> depressive symptoms. The undersigned notes that in
> September 2002 Dr. Ghaemian, a consulting psychiatrist,
> opined that claimant was unemployable (Exhibit 5F, p. 5),
> but his reasons for such appear to be based solely
> upon claimant's subjective complaints and are not
> consistent with the evidence of record when considered
> in its entirety, as discussed earlier. There is a failure
> of proof on the part of the claimant and a lack of
> objective findings to substantiate a more restricted
> functional assessment.
>
> The undersigned finds that claimant has not overcome the
> presumption of non-disability created from the prior
> decision issued in April 2000. The Administrative Law
> Judge found on April 10, 2000 that claimant... had an

16

1

2

3

4

          antisocial personality disorder, but that claimant
retained the residual functional capacity to engage
in a light level of exertional activity. Claimant has
not established with new medical evidence "changed
circumstances" which indicate claimant now suffers from
a greater disability.

(Tr. 19-20.)[3]

5

6

7

8

9

10

11

12

13

14

15

       The ALJ rejected Plaintiff's subjective claim of depression, noting that Plaintiff had not been treated for depression or any other mental health condition; further, Plaintiff had denied experiencing depressive symptoms. The ALJ's reasons were not only specific and legitimate, but were clear and convincing.[4] An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). Although lack of medical evidence cannot form the sole basis for discounting subjective complaints, it is a factor that the ALJ can consider

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] The ALJ further found that the fact that Plaintiff had turned fifty years of age was not a changed circumstance or a fact the precluded application of res judicata. This finding is not challenged by Plaintiff and thus is not considered by this Court.

[4] The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

1  in his credibility analysis. <u>Burch v. Barnhart</u>, 400 F.3d 676, 681

2  (9th Cir. 2005). Further, lack of motivation to obtain consistent

3  treatment for an ailment is powerful evidence of the extent of

4  the subjective symptoms. <u>Id</u>. Finally, in this circuit, valid

5  criteria for evaluating subjective complaints include weak

6  objective support for claims and inconsistent reporting. <u>Tidwell</u>

7  <u>v. Apfel</u>, 161 F.3d 599, 601-02 (9th Cir. 1998). Inconsistent

8  statements are matters generally considered in evaluating

9  credibility and are properly factored in evaluating the

10  credibility of a claimant with respect to subjective complaints.

11  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). An ALJ

12  may consider inconsistencies either in the claimant's testimony

13  or between the claimant's testimony and the claimant's conduct,

14  daily activities, or work record; and testimony from physicians

15  and third parties concerning the nature, severity, and effect of

16  the symptoms of which the claimant complains. <u>Thomas v. Barnhart</u>,

17  278 F.3d 947, 958-59 (9th Cir. 2002). Further, it is permissible

18  to rely on the Plaintiff's testimony regarding her impairments in

19  discrediting a treating physician's opinion. <u>Fisher v. Schweiker</u>,

20  568 F.Supp. 900, 903 (N.D.Cal. 1983).

21      It is undisputed that the record contains substantial

22  evidence supporting the ALJ's conclusions regarding Plaintiff's

23  treatment and reports to his physicians.[5] Thus, the Court

24  concludes that the ALJ stated clear and convincing reasons,

25  supported by substantial evidence, for rejecting Plaintiff's

26  claim of depression.

27

28

[5] Plaintiff's only treatment history was some form of counseling when on parole.

1    The ALJ credited Dr. Manohara's "lengthy report" as well as

2  the opinion of the state agency medical consultant, finding these

3  sources to have imposed appropriate limitations in view of the

4  absence of severe depressive symptoms. It is established that the

5  opinion of an examining physician may amount to substantial

6  evidence and is entitled to greater weight than the opinion of a

7  nonexamining physician. Tonapetyan v. Halter, 242 F.3d 1144, 1149

8  (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

9  1995). The uncontradicted opinion of an examining physician may

10 be rejected only if the Commissioner provides clear and

11 convincing reasons for rejecting it. Id.; Edlund v. Massanari,

12 253 F.3d 1152, 1158-59 (9th Cir. 2001). The contradictory opinion

13 of a nontreating but examining physician constitutes substantial

14 evidence, and may be relied upon where it is based on independent

15 clinical findings. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th

16 Cir. 1995). The opinion of a nontreating, nonexamining physician

17 can amount to substantial evidence as long as it is supported by

18 other evidence in the record, such as the opinions of other

19 examining and consulting physicians, which are in turn based on

20 independent clinical findings. Andrews v. Shalala, 53 F.3d at

21 1041.

22    Dr. Manohara's opinion contained detailed findings with

23 respect to her mental status examination of Plaintiff. The ALJ's

24 express reliance on Manohara's findings and adoption of this

25 opinion is consistent with standards governing consideration of

26 expert opinions. Greater weight will be given to opinions based

27 on or supported by relevant evidence, such as medical signs and

28 laboratory findings. 20 C.F.R. § 416.927(d)(3). Likewise, the

better an explanation a source provides for an opinion, the more
weight will be given to the opinion. Id. The more consistent an
opinion is with the record as a whole, the more weight will be
given to the opinion. 20 C.F.R. § 416.927(d)(4). A conclusional
opinion that is unsubstantiated by relevant medical documentation
may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33
(9th Cir. 1995). The fact that an opinion is based primarily on
the patient's subjective complaints may be properly considered.
Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th
Cir. 1992).

The ALJ thus stated specific and legitimate reasons,
supported by substantial evidence in the record, for relying on
the opinion of the consulting, examining physician.

The ALJ also relied on the opinion of the state agency
consultant that Plaintiff was mildly limited in maintaining
social functioning and moderately limited in maintaining
concentration, persistence, or pace and in the ability to
understand, remember, and carry out detailed instructions. This
opinion was based on the independent findings of Dr. Manohara and
thus constituted substantial evidence.

The ALJ rejected the opinion of Dr. Ghaemian that Plaintiff
was not employable because it appeared to be based solely on
Plaintiff's subjective complaints and was not consistent with the
evidence of record. The recitation of facts set forth above
reflects that the findings of Dr. Manohara, Plaintiff's own
reports to his treating physicians, and even the findings of Dr.
Ghaemian were not consistent with an opinion of disability. It is
appropriate for an ALJ to consider the absence of supporting

findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Further, where a treating source's opinion is based largely on the Plaintiff's own subjective description of her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). The ALJ rejected Plaintiff's claim of limitations due to lack of treatment, inconsistent reporting of symptoms, and inconsistent activities of daily living. (Tr. 19.) Plaintiff does not challenge the propriety of the ALJ's conclusions in this regard.

Plaintiff argues that Dr. Manohara may not be relied upon because she assessed no functional limitations. Contrary to Plaintiff's assertion, Dr. Manohara not only diagnosed Plaintiff, but she expressly addressed Plaintiff's functioning and assigned Plaintiff a global assessment of functioning. A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning and is used to plan treatment and to measure the impact of treatment as well as predicting its outcome. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 30 (4th ed.). A GAF of 52 is consistent with moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers). Id.

at 32. Neither regulations nor governing cases require an ALJ to take a GAF score into consideration in determining the extent of disability. See Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (holding that a GAF score is not essential to an ALJ's RFC for it to be an accurate RFC; mere failure to refer to it in a decision is not sufficient to render RFC inaccurate). Further, the case Plaintiff cites that indicated that a moderate limitation equates to a loss of ability for up to one-third of a time, namely, Morales v. Apfel, 225 F.3d 310, 314-15 (3rd Cir. 2000), involved a situation where there was vocational expert testimony to that effect. Here, as is more fully discussed below, the RFC from the first proceeding precluded any complex tasks; thus, even if Plaintiff were correct about what a moderate limitation would mean in terms of fractions of a work period, a limitation to being able to perform such tasks for only two-thirds of the time would not be pertinent.

Plaintiff asserts that Dr. Manohara's GAF of 52 is demonstrably worse than the 1999 assessment of a GAF of between 60 and 70. (Tr. 34.) However, a GAF does not have a direct correlation to the severity requirements in the SSA listings of mental disorders. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. 50746, 50764-65 (August 21, 2000).

Further, the fact that Plaintiff's symptoms were moderate does not preclude a finding that Plaintiff's mental impairments had not significantly worsened. The pertinent regulation provides that with respect to the functional areas of activities of daily living, social functioning, concentration, persistence, or pace,

the SSA uses a five-point scale of none, mild, moderate, marked, and extreme; it is only the last point on the scale that represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 416.920a(c)(4).

The ALJ found that the evidence did not demonstrate any significant worsening of Plaintiff's impairments. The prior RFC was for light work involving simple, repetitive tasks. (Tr. 37.) The ALJ found in the present proceeding that Plaintiff could perform light, unskilled work. The only moderate limitations credited by the ALJ in the present proceeding were the state agency consultant's moderate limits in maintaining concentration, persistence, or pace, and specifically, the ability to understand, remember, and carry out detailed instructions. Because the prior RFC specified that Plaintiff could perform only simple, repetitive tasks, the slight change in limitations was not significant with respect to its effect on Plaintiff's ability to work. As Defendant notes, the basic mental demands of unskilled work involve the ability to understand, remember, and carry out simple instructions; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a routine work setting. Soc. Sec. Ruling 85-15.

The Court concludes that substantial evidence supported the ALJ's conclusion that there had been no demonstration of a significant worsening of Plaintiff's mental impairment.

In summary, Plaintiff's arguments should be rejected, and it is concluded that the ALJ's decision was reached by the use of proper legal standards and is supported by substantial evidence. ///

RECOMMENDATION

Accordingly, it IS RECOMMENDED that

1. Plaintiff's social security complaint BE DENIED; and

2. Judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Chris Albert Bridges BE ENTERED.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    March 30, 2006**          _____**/s/ Sandra M. Snyder**_____
icido3                                 UNITED STATES MAGISTRATE JUDGE